## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Case No.: 19-20524 TPA |
| TRAILSIDE LODGING, LP, | Chapter 11 |
| Debtor. | |

## CHAPTER 11 PLAN PROPOSED BY TRAILSIDE LODGING, LP

WHITEFORD, TAYLOR & PRESTON, LLP
Michael J. Roeschenthaler (PA ID No. 87647)
Kelly E. McCauley (PA ID No. 316535)
Daniel R. Schimizzi (PA ID No. 311869)
200 First Avenue, Third Floor
Pittsburgh, PA 15222
t: 412-618-5601
f: 412-275-2404
Email:  mroeschenthaler@wtplaw.com

*Counsel for Trailside Lodging, LP*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| INTRODUCTION AND PLAN SUMMARY | | 1 |
| ARTICLE I | DEFINITIONS AND INTERPRETATION | 1 |
| ARTICLE II | MEANS FOR IMPLEMENTING THE PLAN | 7 |
| ARTICLE III | PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES | 7 |
| ARTICLE IV | CLASSIFICATION OF CLAIMS AND VOTING STATUS | 8 |
| ARTICLE V | TREATMENT OF CLASSES OF CLAIMS AND PARTNERSHIP INTERESTS | 8 |
| ARTICLE VI | THE REORGANIZED DEBTOR | 12 |
| ARTICLE VII | PROVISIONS FOR THE ESTABLISHMENT AND MAINTENANCE OF DISBURSEMENT ACCOUNTS | 14 |
| ARTICLE VIII | PROVISIONS GOVERNING DISTRIBUTIONS | 15 |
| ARTICLE IX | PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS | 16 |
| ARTICLE X | PROSECUTION OF ACTIONS | 17 |
| ARTICLE XI | ACCEPTANCE OR REJECTION OF THE PLAN | 17 |
| ARTICLE XII | IDENTIFICATION OF CLAIMS NOT IMPAIRED BY THE PLAN | 17 |
| ARTICLE XIII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 17 |
| ARTICLE XIV | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | 18 |
| ARTICLE XV | RELEASES, EXCULPATION, INJUNCTIONS, AND RELATED PROVISIONS | 19 |
| ARTICLE XVI | PROVISIONS FOR EXECUTION AND SUPERVISION OF THE PLAN | 20 |
| ARTICLE XVII | MISCELLANEOUS PROVISIONS | 21 |
| ARTICLE XVIII | RESERVATION OF RIGHTS | 22 |

## INTRODUCTION

Trailside Lodging, LP (the "Debtor" and "Plan Proponent") respectfully proposes the following *Chapter 11 Plan* (the "Plan") pursuant to the Bankruptcy Code.

## PLAN SUMMARY

The following summary is provided for informational purposes only.  To the extent an inconsistency arises between the Plan and this summary, the Plan shall control.

As more fully set forth herein, the Plan provides for alternative treatment based on two (2) potential means for implementation:  (i) a Sale of all or substantially all of the Debtor's Assets; or (ii) a restructuring of its debt obligations through a traditional reorganization.  In the first scenario, the Debtor seeks to sell all or substantially all of its Assets to the party submitting a Buyer and disburse the proceeds to creditors in accordance with the priority provisions of the Bankruptcy Code.

If the Debtor is unable to consummate the Sale of all or substantially all of its Assets, the second, or alternative, scenario provides that the Debtor will reorganize its operations and fund its restructuring through ongoing operational revenue.  In the event the Debtor pursues this alternative scenario, the Debtor will make disbursements to Creditors holding Allowed Claims in accordance with the priority provisions of the Bankruptcy Code, such that Creditors holding Allowed Claims will receive a greater distribution than would be received in a chapter 7 liquidation.

## ARTICLE I
## DEFINITIONS AND INTERPRETATIONS

**DEFINITIONS**.  As used in this Plan, the following terms shall have the respective meanings specified below and shall be equally applicable to the singular and plural of the terms defined:

1.1    **Action**.  Any cause of action or claim belonging to the Debtor or to its estate arising under the Bankruptcy Code including, without limitation, Sections 542, 544, 545, 547, 549, 550, and 553 thereof, and other applicable state and federal law.

1.2    **Administration Expense**.  Any Claim constituting a cost or expense of administration of the Chapter 11 Case allowed by Final Order under Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business in the ordinary course, any costs and expenses of the management, maintenance, preservation, sale, or other disposition of any of the Debtor's Assets, the administration and implementation of the Plan, the prosecution of Actions, any allowances of compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code to the extent allowed by Final Order, whether arising before or after the Effective Date, and any fees or charges assessed against the Debtor under Chapter 123, Title 28, United States Code.

1

1.3    **Affiliate**.  Shall mean with respect to any party hereto, a person or entity which is owned by, owns, or is in common ownership with such party; provided that "owned by" shall include a situation where a majority of the voting stock of the entity is owned, or a controlling interest is held by such party, either directly or indirectly; and further provided that "common ownership" shall include persons related by blood or marriage and/or trusts for the benefit of such related persons and/or entities owned or controlled by such related parties; and further provided that a general or limited partnership shall be deemed an Affiliate if any one of its general partners would be deemed an Affiliate.

1.4    **Alliance**.  Alliance Laundry Systems, LLC.

1.5    **Allowed**.  The term Allowed when used with respect to a Claim or Class of Claims or Partnership Interest or Class of Partnership Interests, as the case may be, means any Claim against or Partnership Interest in the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against or Partnership Interests in the Debtor or, if no proof of claim or Partnership Interest is filed, which has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent and, in either case, a Claim or Partnership Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order of the Bankruptcy Court, or as to which an objection has been interposed and such Claim or Partnership Interest has been allowed in whole or in part by a Final Order. For purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may have against the holder thereof, to the extent such claim may be set off pursuant to Section 553 of the Bankruptcy Code.

1.6    **Alternative Scenario**.  The scenario described in Section 2.2 of the Plan.

1.7    **Alternative Treatment**.  The treatment of Allowed Claims if the Debtor proceeds under the Alternative Scenario contemplated in this Plan.

1.8    **Assets**.  All tangible and intangible assets and properties of the debtor in existence immediately prior to the Effective Date, including, without limitation, the Debtor's interest under any lease of real or personal property, Cash, Actions, whether or not the subject of pending litigation, and all proceeds thereof

1.9    **Bankruptcy Code**.  Shall mean the chapter and subchapters of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.*, as may be amended from time to time.

1.10    **Bankruptcy Court**.  The unit of the United States District Court for the Western District of Pennsylvania having jurisdiction over the Chapter 11 Case, or in the event such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Western District of Pennsylvania.

1.11    **Bankruptcy Rules**.  The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Case.

1.12    **Business Day**.  Any day except Saturday, Sunday, or legal holidays as such term is defined in Bankruptcy Rule 9006(a).

1.13    **Buyer**.  A bidder submitting the highest and best offer for the Debtor's Assets, as approved by the Bankruptcy Court in accordance with the terms of this Plan.

1.14    **Cash**.  Lawful currency of the United States of America.

1.15    **Chapter 11 Case**.  The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor in possession.

1.16    **Claim**.  Any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, known or unknown, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured, or unsecured.

1.17    **Cobblestone**.  Cobblestone Hotels, LLC.

1.18    **Confirmation Date**.  The date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

1.19    **Confirmation Hearing**.  The hearing to be held by the Bankruptcy Court to determine whether the Confirmation Order will be entered.

1.20    **Confirmation Order**.  An order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.21    **Creditor**.  Any person that has a Claim against the Debtor that arose or is deemed to have arisen on or before the Petition Date, including a Claim against the Debtor's estates of a kind specified in Sections 502(g) or 502(i) of the Bankruptcy Code.

1.22    **Debtor**.  Debtor Trailside Lodging, LP, a Pennsylvania limited partnership.

1.23    **Debtor in Possession**.  The Debtor as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1.24    **DIP Lender**.  Trailside Hospitality Investments, LLC.

1.25    **Disbursement Account(s)**.  The account(s) to be established by the Reorganized Debtor on the Effective Date in accordance with the Plan, together with any interest earned thereon.

1.26    **Disclosure Statement**.  The *Disclosure Statement to Accompany Chapter 11 Plan Proposed by Trailside Lodging, LP*, filed in accordance with Chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.27    **Disputed Claim**.  A Claim against the Debtor the allowance of which, in whole or in part, is the subject of a timely objection to the Allowance thereof, whether by motion or adversary proceeding, interposed by the Debtor or the Reorganized Debtor; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against the Debtor, "**Disputed Claims**" shall mean the lesser of (a) Disputed Claims as filed with the Bankruptcy Court or (b) Disputed Claims as estimated by the Bankruptcy Court pursuant to Section 502(c) of the Bankruptcy Code; provided, further, that in the event that the Bankruptcy Court shall estimate a Disputed Claim for purposes of allowance pursuant to Section 502(c) of the Bankruptcy Code, such estimation shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim.

1.28    **Effective Date**.  The date on which the Confirmation Order becomes a Final Order.

1.29    **Fairchance**.  Fairchance Construction Company.

1.30    **Fay-Penn**.  Fay-Penn Economic Development Counsel.

1.31    **Final Order**.  An order of the Bankruptcy Court (a) as to which the time to appeal, petition for certiorari, or seek re-argument or rehearing has expired and as to which no appeal, re-argument, certiorari petition, or rehearing is pending, or (b) if an appeal, re-argument, certiorari, or rehearing thereof has been sought, the order of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed or from which the re-argument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired.

1.32    **Franchise Agreement**.  The *Cobblestone Hotels, LLC, Franchise Agreement* entered into on February 15, 2014, by and between the Debtor and Cobblestone.

1.33    **General Unsecured Deficiency Claim**.  Any Claim identified in Class 9 arising from any deficiency after the payment of Allowed Secured Claims.

1.34    **General Unsecured Trade Claim**.  Any Claim identified in Class 10 of any Creditor that provided goods and/or services to the Debtor in the ordinary course of business prior to the Petition Date.

1.35    **Holder**.  A person who owns or holds a Claim against, or Partnership Interest in, the Debtor.

1.36    **Hotel**.  The Cobblestone Hotel & Suites hotel owned and operated by the Debtor, located at 237 N. First Street, Connellsville, Pennsylvania, 15425.

1.37    **Insider Claim**.  Any Allowed Claim identified in Class 11 of the Plan.

4

1.38   **Interest**.  Simple interest at the rate of five percent (5%) per annum.

**1.39   JMPMFM**.  JMPMFM Enterprises, LP.

1.40   **Lien**.  A valid, perfected, and enforceable charge against or interest in property of the Debtor, to secure payment of a debt or performance of an obligation.

1.41   **Limited Partners**.  Those certain individual(s) and/or entity(ies) that hold a Partnership Interest.

1.42   **Management Agreement**.  The *Management Agreement* entered into as of October 1, 2015, by and between the Debtor and WGH.

1.43   **Partnership Agreement**.  The *Second Amended and Restated Limited Partnership Agreement of Trailside Lodging, LP*, as may be amended and/or restated from time to time.

1.44   **Partnership Interest**.  Any general or limited partnership interest in the Debtor.

1.45   **Person**.  An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any subdivision thereof or any other entity.

1.46   **Petition Date**.  February 10, 2019, the date the Debtor filed a voluntary Chapter 11 Petition with the Bankruptcy Court.

1.47   **Plan**.  This Chapter 11 Plan Proposed by Trailside Lodging, LP, in accordance with Chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

1.48   **Primary Scenario**.  The scenario described in Section 2.1 of the Plan.

1.49   **Primary Treatment**.  The treatment of Allowed Claims if the Debtor proceeds under the Primary Scenario contemplated in this Plan.

1.50   **Priority Claim**.  Any Claim, other than an Administration Expense and a Priority Tax Claim, entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.51   **Priority Tax Claim**.  Any Claim entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.52   **Pro Rata**.  With respect to Allowed Claims within the same class, the proportion that an Allowed Claim bears to all Allowed Claims within such class; with respect to all Allowed Claims within different classes, the proportion that an Allowed Claim bears to all Allowed Claims within such classes.

1.53    **RAC**.  The Redevelopment Authority of the City of Connellsville.

1.54    **Releasees**.  Collectively, present and former officers, directors, general partner(s), and limited partners of the Debtor, the Reorganized Debtor, the Plan Proponents, and each of their respective officers, directors, employees, advisors, attorneys, professionals, accountants, consultants, agents and other representatives (including their respective officers, directors, employees, members, and professionals).

1.55    **Releasing Parties**.  The Holders of Claims voting to accept the Plan; <u>provided</u>, <u>however</u>, that the Releasing Parties shall not include Holders of Claims voting to reject the Plan.

1.56    **Reorganized Debtor**.    The Debtor and any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.57    **Sale**.  The sale of all or substantially all of the Debtor's Assets as contemplated in this Plan.

1.58    **Schedules**.  The schedules of liabilities filed by the Debtor with the Bankruptcy Court, as amended on or before the Effective Date, listing the assets and liabilities of the Debtor.

1.59    **Secured Claim**.  Any Allowed Claim in respect of which a Lien or Security Interest is held in any of the Debtor's Assets, to the extent that the amount of any such Allowed Claim is not greater than the net proceeds of the appropriate asset(s) of the Debtor found by the Bankruptcy Court to be valid security therefor, and reduced by such further amount or amounts, if any, as may be determined by the Bankruptcy Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset(s) pursuant to Section 506(c) of the Bankruptcy Code.

1.60    **Security Interest**.  A Lien created by an agreement.

1.61    **SSB**.  SSB Bank, formerly known as Slovak Savings Bank.

1.62    **TRF**.  The Reinvestment Fund, Inc.

1.63    **Unsecured Claim**.  Any Claim, other than an Administration Expense, a Priority Claim, a Priority Tax Claim, a Secured Claim, and Claims of Affiliates.

1.64    **US Foods**.  US Foods, Inc.

1.65    **WGH**.  WGH Management, LLC.

1.66    **Other Definitions**.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Bankruptcy Code shall have the meaning set forth therein. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

## ARTICLE II
## MEANS FOR IMPLEMENTING THE PLAN

2.1.    **Primary Scenario:  Sale**.  As more fully set forth below and in the Disclosure Statement, the Debtor has proposed certain procedures for the solicitation and acceptance of bids for the Sale of its Assets.  At the Confirmation Hearing, potential purchasers of the Assets will be able to submit bids to acquire the Debtor's Assets, subject to approval by the Bankruptcy Court.  In the event the Bankruptcy Court approves the sale of the Debtor's Assets to a Buyer, the Debtor will proceed to close on the Sale and the Reorganized Debtor will disburse the proceeds therefrom in accordance with the priority provisions of the Bankruptcy Code and the asset purchase agreement mutually acceptable to the Buyer and the Debtor and/or Reorganized Debtor.  The terms and conditions of the Sale are more fully set forth in the Disclosure Statement.

2.2.    **Alternative Scenario:  Reorganization**.  In the event the Bankruptcy Court does not approve a Buyer for the sale of the Debtor's Assets, the Plan provides for alternative treatment of each class of Creditors that will be satisfied from ongoing operational revenue, such that each Creditor holding an Allowed Claim will receive more than it would receive in a chapter 7 liquidation.  In the Alternative Scenario, the Reorganized Debtor will make the disbursements required under the Plan.

2.3.    **For avoidance of doubt, depending on whether or not the Bankruptcy Court approves the Sale at the Confirmation Hearing, the Plan provides alternative treatments for each class of creditors: Primary Treatment and Alternative Treatment.  The Primary Treatment contemplates approval of the Sale of the Debtor's Assets to the Buyer and disbursement of Sale proceeds in accordance with the priority provisions of the Bankruptcy Code.  The Alternative Treatment contemplates disbursements from ongoing operational revenue to Creditors holding Allowed Claims, such that each Creditor holding an Allowed Claim will receive more than it would receive in a chapter 7 liquidation.**

## ARTICLE III
## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSES

3.1    **Administration Expenses**.

**Primary Treatment**.  Each Holder of an Administration Expense shall be paid the full amount of such Administration Expense, in Cash on the Effective Date or as soon thereafter as practicable, or upon such other terms as may be agreed upon between the Holder of such Administration Expense and the Reorganized Debtor.

**Alternative Treatment**.  Each Holder of an Administration Expense shall be paid the full amount of such Administration Expense, in Cash on the Effective Date or as soon thereafter as practicable, or upon such other terms as may be agreed upon between the Holder of such Administration Expense and the Reorganized Debtor.

7

# ARTICLE IV
## CLASSIFICATION OF CLAIMS AND VOTING STATUS

For the purposes of this Plan, Claims are classified as follows:

| Class | Claimant(s) | Status | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Claims | Unimpaired | No |
| 2 | TRF | Impaired | Yes |
| 3 | Fay-Penn | Impaired | Yes |
| 4 | RAC | Impaired | Yes |
| 5 | JMPMFM | Impaired | Yes |
| 6 | Alliance | Impaired | Yes |
| 7 | Other Secured Claims | Impaired | Yes |
| 8 | Mechanics' Lien Claims | Impaired | Yes |
| 9 | General Unsecured Deficiency Claims | Impaired | Yes |
| 10 | General Unsecured Trade Claims | Impaired | Yes |
| 11 | Insider Claims | Impaired | Yes |
| 12 | Partnership Interests | Deemed Rejected | No/Deemed to Reject |

# ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND PARTNERSHIP INTERESTS

5.1     **Priority Claims and Priority Tax Claims (Class 1 Claims)**.

**Primary Treatment**.  Each Holder of an Allowed Class 1 Claim shall be paid the full amount of such Allowed Class 1 Claim, in Cash, on the Effective Date or as soon thereafter as practicable, or upon such other terms as may be agreed upon between the Holder of such Allowed Class 1 Claim and the Reorganized Debtor.

**Alternative Treatment**.  Each Holder of an Allowed Class 1 Claim shall be paid the full amount of such Allowed Class 1 Claim, in Cash, on the Effective Date or as soon thereafter as practicable, or upon such other terms as may be agreed upon between the Holder of such Allowed Class 1 Claim and the Reorganized Debtor.

*Class 1 is Unimpaired and not entitled to vote.*

5.2     **TRF Claim (Class 2 Claim)**.  TRF has asserted a valid and perfected, first-priority security interest by way of a Subordination Agreement by and between TRF, Fay-Penn, and RAC, in all or substantially all of the Debtor's Assets, including the Hotel.

**Primary Treatment**.  At Closing, TRF shall be paid the value of the collateral securing its Allowed Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  To the extent the Sale of the Debtor's Assets to a Buyer is *not* approved, TRF shall be paid the highest and best offer received for the Debtor's Assets plus $25,000.00, with Interest, representing the value of the collateral securing its Allowed Claim, amortized over a fifteen (15) years period with a balloon payment coming due on the fifth (5th) anniversary of the Confirmation Order becoming a Final Order.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

*Class 2 is Impaired and entitled to Vote*.

5.3    **Fay-Penn Claim (Class 3 Claim)**.  Fay-Penn has asserted a valid and perfected security interest, subordinated to the TRF Claim and the Liens securing the TRF Claim in accordance with a Subordination Agreement by and between TRF, Fay-Penn, and RAC, in all or substantially all of the Debtor's Assets, including the Hotel.

**Primary Treatment**.  At Closing, Fay-Penn shall be paid the value of the collateral securing its Allowed Claim after payment to any senior Creditor holding an Allowed Secured Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  Based on the value of the collateral securing the Allowed Claim of Fay-Penn, the Fay-Penn Allowed Claim shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra.*

*Class 3 is Impaired and entitled to Vote*.

5.4    **RAC Claim (Class 4 Claim)**.  RAC has asserted a valid and perfected security interest, subordinated to the TRF Claim and the Liens securing the TRF Claim in accordance with a Subordination Agreement by and between TRF, Fay-Penn, and RAC, in all or substantially all of the Debtor's Assets, including the Hotel.

**Primary Treatment**.  At Closing, RAC shall be paid the value of the collateral securing its Allowed Claim after payment to any senior Creditor holding an Allowed Secured Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  Based on the value of the collateral securing the Claim of RAC, the RAC Claim shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra.*

*Class 4 is Impaired and entitled to Vote*.

5.5    **JMPMFM (Class 5 Claim)**.  JMPMFM is the holder of a mortgage against the Hotel junior to the Claims of TRF, Fay-Penn, and RAC.

**Primary Treatment**.  At Closing, JMPMFM shall be paid the value of the collateral securing its Allowed Claim after payment to any senior Creditor holding

an Allowed Secured Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  Based on the value of the collateral securing the Claim of JMPMFM, the JMPMFM Claim shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

*Class 5 is Impaired and entitled to Vote*.

5.6      **Alliance (Class 6 Claim)**.  Alliance is the holder of a purchase money security interest in all equipment of the Debtor financed by Alliance including, without limitation, all washers and dryers, whether coin or card-operated, and all items of equipment ancillary to usage in a laundromat with respect to which Alliance has financed.

**Primary Treatment**.  At Closing, Alliance shall be paid the value of the collateral securing its Allowed Claim after payment to any senior Creditor holding an Allowed Claim with a security interest in the equipment Alliance financed.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  The Reorganized Debtor shall pay the Claim of Alliance in accordance with original contract terms; provided, however, that the contract interest rate shall be modified to the Interest rate in this Plan and shall exclude any additional fees and costs, including attorneys' fees.

*Class 6 is Impaired and entitled to Vote.*

5.7      **Other Secured Claims (Class 7 Claims)**.

**Primary Treatment**.  At Closing, all other Holders of Allowed Secured Claims shall be paid the value of the collateral securing their Allowed Claims after payment to any senior Creditor holding an Allowed Secured Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

**Alternative Treatment**.  All other Holders of Secured Claims shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra.*

*Class 7 is Impaired and entitled to Vote*.

5.8      **Mechanics' Lien Claims (Class 8 Claims)**.

**Primary Treatment**.  At Closing, any Mechanics' Lien Creditors shall be paid the value of the collateral securing their Allowed Claims after payment to any senior Creditor holding an Allowed Secured Claim.  Any deficiency shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra*.

10

**Alternative Treatment**.  Based on the value of the Debtor's Assets, Mechanics' Lien Claims shall be treated as a General Unsecured Deficiency Claim in accordance with Paragraph 6.9, *infra.*

*Class 8 is Impaired and entitled to Vote*.

5.9     **General Unsecured Deficiency Claims (Class 9 Claims)**.

**Primary Treatment**.   At Closing, Holders of Allowed General Unsecured Deficiency Claim arising in connection with Classes 2, 3, 4, 5, 6, 7, and 8, shall receive their Pro Rata share of any proceeds remaining from the Sale after payment of all Secured Claims in full and final satisfaction of their Allowed General Unsecured Deficiency Claims.

**Alternative Treatment**.   Each Holder of an Allowed General Unsecured Deficiency Claim shall receive payment, in Cash, of such Holder's Pro Rata share of the proceeds from any Actions pursued by the Debtor or the Reorganized Debtor, as the case may be, in full and final satisfaction of their Allowed General Unsecured Deficiency Claims.  Payments shall commence as soon as reasonably practicable after the Debtor or the Reorganized Debtor, as the case may be, has finally resolved, whether by settlement, judgment, or otherwise, any Actions commenced in accordance with the Plan.

*Class 9 is Impaired and entitled to Vote*.

5.10    **General Unsecured Trade Claims (Class 10 Claims)**.

**Primary Treatment**.  At Closing, Holders of Allowed General Unsecured Trade Claims shall receive their Pro Rata share of any proceeds remaining from the Sale after payment of all Secured Claims in full and final satisfaction of their Allowed General Unsecured Trade Claims; provided, however, that the Buyer, in its sole discretion, may assume any Allowed General Unsecured Trade Claims in connection with the Sale upon terms and conditions mutually acceptable to the Buyer and the Holders of Allowed General Unsecured Trade Claims to be assumed.

**Alternative Treatment**.  In full and final satisfaction of their Allowed General Unsecured Trade Claims, each Holder of an Allowed General Unsecured Trade Claim shall receive payment, in Cash, of such Holder's Pro Rata share of: (i) the proceeds from any Actions pursued by the Debtor or the Reorganized Debtor as soon as reasonably practicable after the Debtor or the Reorganized Debtor, as the case may be, has finally resolved, whether by settlement, judgment, or otherwise, any Actions commenced in accordance with the Plan; and (ii) commencing on or before the close of the second (2nd) quarter after the first (1st) anniversary of the Effective Date of the Plan and continuing for five (5) consecutive years, a Pro Rata share of ten percent (10%) of the Reorganized Debtor's net income after taxes

calculated based on the prior calendar year, which shall be paid on or before the close of the second (2nd) quarter of each subsequent calendar year.

*Class 10 is Impaired and entitled to Vote.*

5.11    **Insider Claims (Class 11 Claims)**.

**Primary Treatment**.  In the event all Holders of Allowed Claims in Classes 1 through 10, *supra*, are paid in full (including reserves for Disputed Claims), any Insider that has an Allowed Claim against the Debtor shall receive shall receive their Pro Rata share of remainder, if any, of the Debtor's Assets, in full and final satisfaction of their Allowed Insider Claims.

**Alternative Treatment**.  In full and final satisfaction of their Allowed Insider Claims, each Holder of an Allowed Insider Claim shall receive payment, in Cash, of such Holder's Pro Rata share of: (i) the proceeds from any Actions pursued by the Reorganized Debtor as soon as reasonably practicable after the Debtor or the Reorganized Debtor, as the case may be, has finally resolved, whether by settlement, judgment, or otherwise, any Actions commenced in accordance with the Plan; and (ii) commencing on or before the close of the second (2nd) quarter after the first (1st) anniversary of the Effective Date of the Plan and continuing for five (5) consecutive years, a Pro Rata share of ten percent (10%) of the Reorganized Debtor's net income after taxes calculated based on the prior calendar year, which shall be paid on or before the close of the second (2nd) quarter of each subsequent calendar year.

*Class 11 is Impaired and entitled to Vote.*

5.12    **Partnership Interests (Class 12 Claims)**.

**Primary Treatment**.  Upon the Effective Date of the Plan, Partnership Interests shall be cancelled and all equity of the Debtor shall be revested in the Reorganized Debtor in accordance with Article VI of this Plan.

**Alternative Treatment**.  Upon the Effective Date of the Plan, Partnership Interests shall be cancelled and all equity of the Debtor shall be revested in the Reorganized Debtor in accordance with Article VI of this Plan.

*Class 12 is deemed to reject the Plan and is not entitled to Vote.*

## ARTICLE VI
## THE REORGANIZED DEBTOR

6.1.    **Vesting of Equity in the Reorganized Debtor**.  On the Effective Date, the equity interests in the Debtor shall vest in the Reorganized Debtor.  In exchange for: (i) the continued management and operation of the Reorganized Debtor to implement the terms of this Plan and

operate the Reorganized Debtor as a going concern; and (ii) a capital contribution of [four hundred fifty thousand dollar and no cents ($450,000.00)] for purposes of funding the Plan and providing an equity cushion for the Reorganized Debtor's continued operations, the Reorganized Debtor shall issue one hundred percent (100%) of its equity to Nathaniel R. Morgan, or his designee(s) and/or assign(s).

6.2.   **Duties and Responsibilities of the Reorganized Debtor**.  On the Effective Date, the Reorganized Debtor shall have all powers, authority, and responsibilities specified in the Plan, shall be vested with the rights, powers and duties of the Debtor, and shall assume its duties and responsibilities under the Plan.

6.3.   **Primary Scenario**:  In the event the Bankruptcy Court approves the Sale of the Debtor's Assets at the Confirmation Hearing, the Debtor or the Reorganized Debtor, as the case may be, shall be authorized to, *inter alia*:

(a)   To execute and/or deliver on behalf of the Debtor, the agreements, documents, and instruments necessary or appropriate to effectuate the Sale, the Plan, or as otherwise contemplated by the Plan, and any schedules, exhibits, or other documents attached thereto or contemplated thereby, in the name and on behalf of the Debtor;

(b)   To employ one or more persons, entities, or professionals to assist the Reorganized Debtor with performing its duties under the Plan;

(c)   To act as disbursing agent under, and make distributions pursuant to, the Plan;

(d)   To act as the representative of the Debtor in the prosecution of all Actions;

(e)   To act as the representative of the Debtor in connection with filing objections to Disputed Claims and resolving disputes with respect to the Allowance of Claims;

(f)   To retain, preserve, liquidate and distribute the remaining Assets for the benefit of Holders of Allowed Claims entitled to a distribution in accordance with the terms of the Plan;

(g)   To perform all other duties and responsibilities specifically assigned to the Reorganized Debtor under the terms of the Plan; and,

(h)   To take all steps necessary to effectuate the Plan and take such other actions as the Reorganized Debtor determines, in his sole and sound business judgment, are in the best interests of the Holders of Allowed Claims.

6.4.   **Alternative Scenario**:  In the event the Bankruptcy Court ***does not approve*** the Sale of the Debtor's Assets at the Confirmation Hearing, on the Effective Date, all Assets of the estate shall vest in the Reorganized Debtor.  On and after the Effective Date, the Reorganized Debtor may engage in any act or activity of the Debtor, without the Bankruptcy Court's

supervision or approval, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or Confirmation Order, including, without limitation:

(a)   To continue the business of the Debtor in order to fund the distributions required under the Plan;

(b)   To employ one or more persons, entities, or professionals to assist the Reorganized Debtor with performing its duties under the Plan;

(c)   To act as disbursing agent under, and make distributions pursuant to, the Plan;

(d)   To act as the representative of the Debtor in the prosecution of all Actions;

(e)   To act as the representative of the Debtor in connection with filing objections to Disputed Claims and resolving disputes with respect to the Allowance of Claims;

(f)   To perform all other duties and responsibilities specifically assigned to the Reorganized Debtor under the terms of the Plan; and,

(g)   To take all steps necessary to effectuate the Plan and take such other actions as the Reorganized Debtor determines, in his sole and sound business judgment, are in the best interests of the Holders of Allowed Claims.

## ARTICLE VII
## PROVISIONS FOR THE ESTABLISHMENT AND
## <u>MAINTENANCE OF DISBURSEMENT ACCOUNTS</u>

7.1.   **Establishment of Disbursement Accounts**.   On the Effective Date, the Reorganized Debtor shall establish one or more segregated bank accounts, as disbursing agent under the Plan, which accounts shall be held in trust for the benefit of Creditors pursuant to the Plan and utilized solely for the investment of Cash and the distribution of Cash consistent with the terms and provisions of the Plan.

7.2.   **Post-Confirmation Administration: Primary Scenario**.   On the Effective Date, the proceeds from the Sale or other disposition of the Debtor's Assets shall be deposited into such Disbursement Account(s) less the sum of Seventy-Five Thousand Dollars ($75,000) which sum shall be retained by the Reorganized Debtor in a segregated account for reasonably anticipated post-Effective Date administration expenses in connection with the administration and implementation of the Plan, including, without limitation, the prosecution of Actions by the Reorganized Debtor, the prosecution of objections to Disputed Claims, the payment of compensation and reimbursement of expenses to the Reorganized Debtor and its counsel to the extent allowed by the Bankruptcy Court upon application therefor. From and after the Effective Date, the Reorganized Debtor shall deposit into the Disbursement Account(s) all proceeds of the Debtor's Assets.

14

7.3.    **Post-Confirmation Administration:  Alternative Scenario**.  On the Effective Date and for each month thereafter until the disbursements under the Plan are completed, the Reorganized Debtor shall pay, in the ordinary course of business, all post-Effective Date Administration Expenses in connection with the administration and implementation of the Plan, including, without limitation, the prosecution of Actions by the Reorganized Debtor, the prosecution of objections to Disputed Claims, and the payment of compensation and reimbursement of expenses to the Reorganized Debtor and its counsel to the extent allowed by the Bankruptcy Court upon application therefor. From and after the Effective Date, the Debtor shall deposit into the Disbursement Account(s) all proceeds of the Debtor's Assets.

7.4.    **Maintenance of Disbursement Account(s)**. Disbursement Account(s) shall be maintained by the Debtor or the Reorganized Debtor, as the case may be, at one or more domestic banks or financial institutions of the Reorganized Debtor's choice; <u>provided</u>, <u>however</u>, that any account(s) maintained by the Reorganized Debtor shall be identified on the Approved Depository Listing maintained by the United States Trustee for the Western District of Pennsylvania.

**ARTICLE VIII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

8.1.    **Distributions for Claims Allowed as of the Effective Date**.  Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, the Debtor, or the Reorganized Debtor, as the case may be, shall make distributions pursuant to the Plan on account of all Allowed Claims that are entitled to receive distributions under the Plan, and shall make further distributions to Holders of Claims that subsequently are determined to be Allowed Claims.

8.2.    **Delivery of Distributions**.  Distributions to Holders of Allowed Claims shall be made at the address of the Holder of such Claim as of the Effective Date; *provided*, *however*, that the manner of such distributions shall be determined at the reasonable discretion of the Debtor or Reorganized Debtor, as the case may be.

8.3.    **Address of Record**.  The address of the Holder of a Claim shall be, for purposes of distributions made pursuant to the Plan, the address set forth in the Debtor's or Reorganized Debtor's books and records, or if no such address, in any proof of Claim filed by such Holder.

8.4.    **Undeliverable Distributions**.  If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtor is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any interest, dividends or other accruals of any kind.  The Reorganized Debtor shall make all distributions that become deliverable in accordance with the Plan.  There is no obligation of the Reorganized Debtor to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules and the Claims Register.  Unless the recipient of an undeliverable distribution provides the Reorganized Debtor with the information required or otherwise requested to make a distribution deliverable within sixty (60) calendar days of the distribution being returned as undeliverable, without further order of the Bankruptcy Court, such undeliverable distribution shall be discharged and the recipient thereof shall be forever barred from asserting any such Claim

15

against the Reorganized Debtor or its property. In such cases, any Cash held for distribution on account of such Claims shall be property of the Reorganized Debtor, free of any restrictions thereon. Nothing contained herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

8.5.    **Compliance with Tax Requirements/Allocations**.  In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Upon written request of the Reorganized Debtor, Holders of Allowed Claims shall provide the Reorganized Debtor with any required tax instruments or forms necessary to receive a distribution.  In the event the Holder of an Allowed Claim fails to provide the Reorganized Debtor with any required tax instruments or forms for distribution purposes, any Distribution on account of such Allowed Claim shall be deemed an Undeliverable Distribution.

## ARTICLE IX
## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

9.1.    **Objections to Claims; Prosecution of Disputed Claims**.  The Reorganized Debtor shall object to the allowance of Claims filed with the Bankruptcy Court with respect to which the Debtor denies liability, in whole or in part. All objections shall be prosecuted by the Reorganized Debtor. The Reorganized Debtor may compromise and settle any objections to Claims, subject to the approval of the Bankruptcy Court. The Reorganized Debtor shall file and serve all objections to Claims as soon as practicable, but in no event later than ninety (90) days after the Effective Date or such later date as approved by the Bankruptcy Court.

9.2.    **Payments and Distributions on Disputed Claims**.

a.    From and after the Effective Date, the Reorganized Debtor shall reserve and hold for the benefit of each Holder of a Disputed Claim, Cash in an amount equal to the Pro Rata payment which would have been made to the Holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim or (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court for purposes of allowance, which amount shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim. No payments or distributions shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof by Final Order.

b.    At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Holder of such Allowed Claim shall receive the payments to which such Holder is then entitled under the Plan. Such payments shall be made as soon as practicable after the date that the order of the Bankruptcy Court allowing such Claim becomes a Final Order.

## ARTICLE X
## PROSECUTION OF ACTIONS

10.1.  **Prosecution of Actions**.  From and after the Effective Date, the Reorganized Debtor shall prosecute all Actions that may be pending on the Effective Date, or instituted by the Reorganized Debtor after the Effective Date.

## ARTICLE XI
## ACCEPTANCE OR REJECTION OF PLAN

11.1.  **Impaired Classes to Vote**.  Each impaired Class of Creditors with Claims against or Partnership Interests in the Debtor's estate shall be entitled to vote to accept or reject the Plan.

11.2.  **Acceptance by Class of Creditors**.  A Class of Creditors or Partnership Interests shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Allowed Partnership Interests of such Class that have accepted or rejected the Plan.

11.3.  **Cramdown**.  In the event that any impaired Class of Creditors with Claims against, or Class of Partnership Interests in, the Debtor shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code or amend the Plan pursuant to the Plan.

## ARTICLE XII
## IDENTIFICATION OF CLAIMS NOT IMPAIRED BY THE PLAN

12.1.  **Unimpaired Classes**.  The Claims included in Class 1 are not impaired under this Plan.

12.2.  **Impaired Classes to Vote on Plan**.  The Claims and Partnership Interests included in Classes 2, 3, 4, 5, 6, 7, 8, 9, 10, and 11 of the Plan are impaired and are therefore entitled to vote to accept or reject the Plan.

12.3.  **Impaired Classes Deemed to Reject**.  Class 12 is impaired and deemed to reject the Plan.

12.4.  **Controversy Concerning Impairment**.  In the event of a controversy as to whether any Creditor or Holder of a Partnership Interest or Class of Creditors or Class of Partnership Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE XIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

13.1.  **Rejection of Executory Contracts**.  Unless otherwise provided for in connection with the Sale, any executory contracts or unexpired leases not expressly assumed in this Plan, or

which are not the subject of a motion by the Debtor to assume the same pending as of the Effective Date, shall be deemed to have been rejected by the Debtor upon the Effective Date, in accordance with Section 365 of the Bankruptcy Code.

## ARTICLE XIV
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

14.1. **Conditions Precedent to Confirmation**.

    a. The Plan and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance reasonably satisfactory to the Debtor and the Plan Proponent; and,

    b. The proposed Confirmation Order shall be in form and substance reasonably satisfactory to the Debtor, the Plan Proponent and, to the extent applicable, the purchaser of the Debtor's Assets.

14.2. **Conditions Precedent to the Effective Date**. The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with Section 14.3.

    a. The Bankruptcy Court shall have entered one or more Final Orders (which may include the Confirmation Order) authorizing the Sale to the Buyer (to the extent applicable) and authorizing the assumption and/or rejection of executory contracts and unexpired leases by the Debtor as contemplated in the Plan.

    b. The Confirmation Order shall have become a Final Order in form and substance reasonably satisfactory to the Debtor, the Plan Proponent, and, to the extent applicable, the purchaser of the Debtor's Assets.

    c. The most current version of the Plan and all of the schedules, documents, and exhibits contained therein shall have been filed and approved in form and reasonably satisfactory to the Debtor and, to the extent applicable, the purchaser of the Debtor's Assets.

    d. In the event a Final Order (which may be the Confirmation Order) is entered approving the Sale of the Debtor's Assets to the Buyer, the Debtor shall have closed on the Sale.

14.3. **Waiver of Condition**. The Debtor, the Plan Proponent, and, to the extent applicable, the purchaser of the Debtor's Assets, collectively, may waive any of the conditions to Confirmation or the Effective Date at any time.

14.4. **Notice of Effective Date**. Upon the occurrence of the Effective Date of the Plan, the Debtor or the Reorganized Debtor, as the case may be, shall electronically docket, and serve upon all Creditors and parties-in-interest, a notice identifying the date on which the Effective Date of the Plan has occurred.

## ARTICLE XV
## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

15.1.    **Compromise and Settlement**.  Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Partnership Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Partnership Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtor, Estates and holders of Claims and Partnership Interests.

15.2.    **RELEASES OF THE DEBTOR**. NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES HEREBY PROVIDE A FULL DISCHARGE AND RELEASE TO THE RELEASEES AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, ACTIONS, DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, INCLUDING THOSE IN ANY WAY RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR CONSUMMATING THE PLAN, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN OR ANY OTHER POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR; ***PROVIDED***, ***HOWEVER***, THAT THE FOREGOING SHALL NOT OPERATE TO WAIVE OR RELEASE ANY ALLOWED CLAIMS OF RELEASING PARTIES TREATED UNDER THE PLAN; ***PROVIDED***, ***FURTHER***, THAT THE FOREGOING RELEASE SHALL NOT APPLY TO ANY CLAIMS OR ACTION ARISING FROM OR RELATED TO THE SALE, SHOULD THE SALE BE APPROVED.

15.3.    **EXCULPATION**.  NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE RELEASEES SHALL NEITHER HAVE NOR INCUR ANY LIABILITY FOR ANY AND ALL CLAIMS AND ACTIONS, INCLUDING ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO, FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, SOLICITING ACCEPTANCES FOR, CONFIRMING OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT, OR ANY OTHER CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY OTHER PRE-OR-POST-PETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR;

*PROVIDED*, *HOWEVER*, THAT THE FOREGOING SHALL HAVE NO EFFECT ON THE LIABILITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; *PROVIDED*, *FURTHER*, THAT THE FOREGOING PROVISIONS SHALL NOT APPLY TO ANY ACTS, OMISSIONS, CLAIMS, ACTIONS OR OTHER OBLIGATIONS EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR ANY DEFENSES THERETO.

15.4.   **INJUNCTION**.   FROM AND AFTER THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS AND PARTNERSHIP INTERESTS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTOR, REORGANIZED DEBTOR, THE RELEASEES, OR THEIR SUCCESSORS AND ASSIGNS, AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR AN OBLIGATIONS ISSUED PURSUANT TO THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL HOLDERS OF CLAIMS AND PARTNERSHIP INTERESTS SHALL BE PRECLUDED FROM ASSERTING ANY OTHER CLAIMS OR PARTNERSHIP INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR PRIOR TO THE EFFECTIVE DATE.  THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND PARTNERSHIP INTERESTS IN THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE AND FINAL SATISFACTION OF CLAIMS AND PARTNERSHIP INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST, AND PARTNERSHIP INTERESTS IN, THE DEBTOR OR THE REORGANIZED DEBTOR SHALL BE FOREVER SATISFIED AND RELEASED IN FULL.

## ARTICLE XVI
## PROVISIONS FOR EXECUTION AND SUPERVISION OF THE PLAN

16.1.   **Retention of Jurisdiction**.  The Bankruptcy Court shall retain and have exclusive jurisdiction over the Chapter 11 Case for the following purposes:

a.   To determine any and all objections to the allowance of Disputed Claims or Partnership Interests;

b.   To determine any and all pending applications for the rejection or assumption of executory contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

    c.   To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, or instituted by the Reorganized Debtor after the Effective Date, including, without limitation, any Actions;

    d.   To consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Court;

    e.   To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

    f.   To consider and act on the compromise and settlement of any Action;

    g.   To issue such orders in aid of execution of the Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

    h.   To enforce the terms and conditions of the Sale and any asset purchase agreement executed in connection therewith; and,

    i.   To determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

16.2.   **Amendment of Plan**. The Plan may be amended by the Debtor before or after the Effective Date as provided in Section 1127 of the Bankruptcy Code.

## ARTICLE XVII
## MISCELLANEOUS PROVISIONS

17.1.   **Section 1146 Exemption**.  Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

17.2.   **Section 1125(e) Good Faith Compliance**.  The Debtor, Reorganized Debtor, Plan Proponent, and each of their respective representatives, shall be deemed to have acted in "good faith" under Section 1125(e) of the Bankruptcy Code.

17.3.   **Further Assurances**.  The Debtor, Reorganized Debtor, all holders of Claims receiving distributions hereunder and all other parties-in-interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

17.4.    **Severability**. If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provisions held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be effected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

17.5.    **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws, of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of law thereof.

17.6.    **Section Headings**. The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

**ARTICLE XVIII**
**RESERVATION OF RIGHTS**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, the Disclosure Statement, any statement or provision contained therein, nor the taking of any action by a Debtor with respect to the Plan and/or Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims, Partnership Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

Date: May 13, 2019                     WHITEFORD, TAYLOR & PRESTON, LLP

By: /s/ Michael J. Roeschenthaler
Michael J. Roeschenthaler (PA ID No. 87647)
Kelly E. McCauley (PA ID No. 316535)
Daniel R. Schimizzi (PA ID No. 311869)
200 First Avenue, Third Floor
Pittsburgh, PA 15222
t: 412-618-5601
f: 412-275-2404
Email:  mroeschenthaler@wtplaw.com